PITTSBURGH & WESTERN RAILWAY CO. ET AL. v. GARLICK ET AL.

1. CONVEYANCE WITHOUT TITLE—ACQUIRED SUBSEQUENTLY INURES TO GRANTEE.

Under a quitclaim deed by a railroad company as lessee in perpetuity of another company's railroad, conveying a strip of the right of way, parallel with the track, granting "all title that it has or ought to have" to said land, and covenanting that "neither it nor its successors or assigns, or any one claiming title by, through or from it shall ever assert any title" thereto, where neither lessor nor lessee had any title at the time of the conveyance, but afterwards, being compelled to appropriate, lessor acquired title and conveyed by deed to lessee, the title thus acquired inures to the benefit of the grantees of such lessee, and their assigns; and grantors and all claiming under them are estopped by such quitclaim deed from asserting title to the land in question.

2. RAILROAD COMPANY MAY SELL PART OF ITS RIGHT OF WAY.

Under secs. 3239, 3281, 3281, 3282, 6416, 6420, 6433, 6343 and 6344, Rev. Stat., permitting a railroad company to appropriate a fee, and requiring full compensation therefor, the title acquired by such appropriation is absolute for railroad purposes and the railway company may lawfully sell a part of such, land to another company for like purposes, without working an abandonment.

3. IRRESPECTIVE OF TITLE—COULD NOT COMPEL APPROPRIATION.

Whether a fee absolute or conditional, or a mere easement, was appropriated by the railroad company, under the statutes referred to, the original owner could not claim abandonment by reason of sale to another company, as the possession, in either case, would be perpetual and exclusive, and the additional use being the same for which the land was appropriated, there would be no remaining interest in the original owner to be compensated for and he could not, therefore, compel the second company to commence appropriation proceeding, unless, as adjoining owner, he still held lands that might be injured by the additional use, which he owned at the time of the appropriation.

4. ANOTHER RAILROAD NOT AN ADDITIONAL USE.

The fact that part of a strip of land acquired by one railway company for its railroad is sold to another company and another track is constructed thereon, running between two tracks already constructed, is not an additional use requiring appropriating or compensation to adjoining land owners.

**5. ACTION TO RECOVER OR COMPEL APPROPRIATION.**

A person claiming ownership, where railroad companies were in possession under the conveyances referred to in the first paragraph of this syllabus, can maintain an action to recover the land or compel its appropriation only upon the strength of his own title. As grantee of the original owners plaintiff could not maintain such action unless the transfer from one railway company to another worked an abandonment.

**6. PARTIES TO ACTION BY RAILROAD COMPANY TO QUIET TITLE.**

Where a strip of abandoned canal land was sold by the owner to a railroad company, which built its road thereon, and thereafter another railroad company appropriated for its road all of such land not conveyed to such first company, and subsequently its lessee and grantee sold to a third company a portion of such strip lying between the tracks of the first two roads, and said third company built its tracks partly on the part of such strip so sold to said first company, in an action by the third company to quiet its title to said land against one to whom the original owner had quitclaimed, the first company is a proper party, and by cross-petition may seek the same relief, especially when the line between such companies is in dispute.

APPEAL.

*Jones & Anderson,* for plaintiff.

*Carey & Mullins,* for cross-petitioners.

*Arrel, McVey & Robinson, Hine & Kennedy,* for Garlick.

LAUBIE, J.

The Pittsburgh & Western Railway Company, Thomas M. King, receiver of the Pittsburgh & Western Railway Company, and the Pittsburgh, Cleveland and Toledo Railroad Company, against Henry M. Garlick, the Pittsburgh, Youngstown and Ashtabula Railroad Company, and the Pennsylvania Company, is here upon appeal and has been tried and submitted to the court.

The action was brought to quiet the title of the Pittsburgh & Western Railway Company to a certain strip of land in this city at Spring Common, as it is called, that company alleging that Henry M. Garlick claims to own, and threatens, or is about to take steps, to compel that company, under the statute, to appropriate such land; and the company alleges that his claim is a cloud upon its title, and asks to have its title quieted as against him, and for an injunction to restrain him from any such proceeding. The defendant, The Pittsburgh, Youngstown and Ashtabula Railway Company, files a cross-petition for the same purpose in regard to a portion of the lands, alleging substantially the same facts against Garlick as alleged by plaintiff. Garlick lays claim to this property by deed from the heirs of the Parmelees. The Pittsburgh & Western Railway Company claims to own this land by intermediate conveyance to the Pittsburgh, Cleveland and Toledo Railroad Company by the New York, Pennsylvania and Ohio Railroad Company, and the question arises whether or not the New York, Pennsylvania and Ohio Railroad Company had any title to that land.

The New York, Pennsylvania and Ohio Railroad Company was in possession of the premises when it made and executed this deed to the Pittsburgh, Cleveland and Toledo Railroad Company, and it possibly had no title to the land when it gave the deed.

Counsel for Garlick seem to base their contention that no title was conveyed by this deed, upon the presumption that all of the facts and rights of the parties are to be determined as of the time the deed was

made. That if the New York, Pennsylvania and Ohio Railroad Company had no title, then none could vest in the grantee. But this is a mistake, a contention we can not agree with, and is contrary to the covenants in the deed. If the New York, Pennsylvania and Ohio Railroad Company acquired title thereafter, that title inured to the benefit of its grantee, the Pittsburgh, Cleveland and Toledo Railroad Company, if for no other reason, for the reason that the deed estops the New York, Pennsylvania and Ohio Railroad Company, or any one claiming by or through it, from ever making any claim to the land. The deed of the New York, Pennsylvania and Ohio Railroad Company to the Pittsburgh, Cleveland & Toledo Railroad Company quit-claims " all title that it has or that it ought to have " to the land in question, and it covenants in that deed " that neither it nor its successors or assigns, or any one claiming title by, through or from it shall ever assert any title " to those lands; so that, if the New York, Pennsylvania and Ohio Railroad Company, after the execution of this deed, obtained title to the lands, that title inured to the benefit of the Pittsburgh, Cleveland and Toledo Railroad Campany, its grantees or assigns.

Prior to 1880, the New York, Pennsylvania and Ohio Railroad Company was in the possession, as lessee in perpetuity, of the Cleveland and Mahoning Valley railway, and in 1880, the Cleveland and Mahoning Valley Railway Company was compelled to commence appropriation proceedings to appropriate certain lands, of which the land in question was a part, and of which it and its said lessee were in possession, for a branch track for the benefit of its lessee, The New York, Pennsylvania and Ohio Railroad Company, making that company and the Parmelees and other parties; and compensation was awarded to the Parmelees as the owners of the land of which the strip in question was a part to its full value of over $13,000, which was paid by the New York, Pennsylvania and Ohio Railroad Company; and subsequently the Cleveland and Mahoning Valley Railway Company executed and conveyed to the New York, Pennsylvania and Ohio Railroad Company all the right and title to the lands in question which it had acquired by and through such appropriation proceeding; and this title, thus acquired, inured to be the benefit of the former grantee of the New York, Pennsylvania and Ohio Railroad Company, the Pittsburgh, Cleveland and Toledo Railroad Company, and to its grantee, the Pittsburgh and Western Railway Company. But at all events, the defendant, Garlick, is not in a position to raise this question. He is not claiming the land by any title derived from or through the New York, Pennsylvania & Ohio Railroad Company, or the Cleveland & Mahoning Valley Railway Company, but in opposition to them. The plaintiffs are in possession, and Garlick can recover the land, or compel its appropriation as owner, only on the strength of his own title. As grantee of the original owners, the Parmelees, he can do neither, unless, as he claims, the conveyance by the Cleveland & Mahoning Valley Railway Company to the New York, Pennsylvania & Ohio Railroad Company, and by the latter company to the Pittsburg, Cleveland & Toledo Railroad Company of a part of the tract appropriated, worked an abandonment of that part of the land.

I pass now to the principal contention of the defendant Garlick, that the conveyance by the Cleveland and Mahoning Valley Railway Company to the New York, Pennsylvania and Ohio Railroad Company, and by that company to the Pittsburgh, Cleveland and Toledo Railroad Company, was in law an abandonment of the right acquired by the

Cleveland & Mahoning Valley Railway Company by the appropriation of the land; that thereby the land reverted to the original owners, the Parmelees. But little weight can be attached to this claim so far as the New York, Pennsylvania and Ohio Railroad Company is concerned, because it was a party to the appropriation; and not only' did the Cleveland and Mahoning Valley Railway Company allege in that proceeding that the appropriation was for the benefit of its lessee, the New York, Pennsylvania and Ohio Railroad Company, but the latter company paid the compensation awarded to the owners of the land, the Parmelees.

Nor can we agree to the contention that the sale and conveyance by the New York, Pennsylvania and Ohio Railroad Company to the Pittsburgh, Cleveland and Toledo Railroad Company of a part of the tract thus appropriated by the Cleveland and Mahoning Valley Railway Company, worked an abandonment of so much of the tract.

The question of abandonment is said to be a question of "intention." The Junction Railroad Co. v. Ruggles, 7 Ohio St., 1; Hatch v. Railroad Co., 18 Ohio St., 92. And in Junction Railroad Co. v. Ruggles, *supra*, it was held that where there is no limit as to time expressed in a grant to a railroad company for a right of way, the easement is perpetual, and a sale of part of the line to another railroad company is not an abandonment of the easement. In that case, the lands in question, or the easement, was not appropriated, but was obtained by grant. The owner, Ruggles, agreed to quitclaim to the original company, if it would construct and ' maintain its road over and upon his lands, so much thereof as it might acquire by appropriation, for the uses and purposes of its railroad. That company located, but had not constructed its road over the land when the whole line was sold under mortgage foreclosure by the state; and in that sale, one Lane bought a section including the Ruggles' lands, and subsequently sold it to the Junction Railroad Company, and that company built its road over Ruggles' lands. Ruggles claimed an abandonment. The court held that the original company took a perpetual easement, and that there was no abandonment. While the court said it was not called upon to consider the question under the power of eminent domain, it held that the original company took only a perpetual easement for the uses of its railroad, and, as beyond all question, the company would have obtained at least that interest in the lands by appropriation, it is difficult to see why the owner of such easement could sell it in the one instance, without working an abandonment, and not in the other. In each instance the company would acquire the easement for the *same* special purpose—for the construction and uses of *its* railroad. Is it possible that the law·cannot and does not confer upon the purchaser the same rights of ownership in the one case as in the other?

In Hatch v. Railroad Co., *supra*, the same principal was applied to a sale by the White Water Canal Company of its easement to the Cincinnati and Indiana Railroad Company for a right of way.

In that case it appeared that the canal company, by special act in 1837, was authorized to construct a canal, and the act conferred upon the commissioners of Hamilton county authority to appoint three arbitrators to assess the damages to the owners of property taken, and to ascertain, and set off against such damages, the value of the advantages to such owners by reason of the location and construction of such canal.

Railway Co. v. Garlick.

Hatch's property was appropriated under the act, and the damages to him cut down by reason of the advantage the location and construction of the canal would be to him in the way of mill sites and water power. The canal company held and used his strip of land for its canal until 1863, when it sold and conveyed it to the Cincinnati and Indiana Railroad Company for its right of way, and that company built its road thereon. The court held that such sale did not work an abandonment of the easement to the original owner.

In the opinion Judge Brinkerhoff said that the easement taken "was regarded when taken, as a perpetual easement; it was so looked upon by both parties; courts and juries awarded compensation to the plaintiff on this basis; and he can not now claim, with any semblance of justice, to be paid over again for the same thing. * * *

"The general purposes to which the easement was and is applied are the same, to-wit: the purposes of a public way, to facilitate the transportation of persons and property."

In Malone v. Toledo, 28 Ohio St., 643, the court held that where the land of the plaintiff had been appropriated for a canal by the state, and used as such, it was the same as if done by a corporation; that part of the canal having been conveyed to the city for a street, with water pipes and sewers placed therein, such sale and change of use did not work an abandonment whether the appropriation carried a fee or a mere easement, and that, therefore, it was unnecessary to determine whether the state took a fee or an easement.

In the opinion, page 660, it is said: "However it may be elsewhere, it appears to us to be the law in this state, that when property has been appropriated for one public purpose, it may be applied to another, not substantially different, and it is still subserving its original uses. Further, that such a change does not afford ground of complaint, that the property is wholly forfeited, or the public rights extinguished."

Counsel for the defendant, Garlick, however, claim that although there was no intention of abandonment in this case, the sale and conveyance operated as an abandonment in law, and they rely upon Platt v. Pennsylvania Co., 43 Ohio St., 228, where, without undertaking to overrule the cases to which I have referred, by a divided court, three to two, a different doctrine was established, and which we would be compelled to follow, if this case could not be distinguished from that one.

We think, however, that this case can be distinguished from that one. In that case, the court was considering the effect of an appropriation under the provisions of the constitution of 1802, and under the act of February 11, 1848. So that it was not a case governed by the present constitution, or by the present statutes, and it might properly be dismissed with that simple remark. But we do not propose to do that. We have examined carefully to see wherein the principles enunciated in that case bear upon the case of an appropriation under the constitution of 1851, and the act of 1852.

In that case it is said: "Oliver was owner in fee of a lot of land, which extended to the middle of the Maumee river, on the east side of that stream. In February 1851, the Lake Shore Railway Company appropriated for its road running north and south, parallel with the river, a strip of ground through such lot one hundred feet in width and twelve hundred feet in length, which left a portion of such lot between the land appropriated and the river, and also a portion on the other side of the strip appropriated. No compensation in money was

assessed or paid, the supposed benefits having been set off against the actual damages, as authorized by the constitution of 1802. The appropriation was made under the act of 1848, 'regulating railroad companies' (2 Curwen, 1394, section 9), by which such a company had the right to enter upon land and 'appropriate so much thereof as may be necessary for *its* railroad,' and 'hold the interest in such lands, * * * and the privilege of using any materials on said roadway within fifty feet on each side of the center of such roadway for the uses aforesaid. * * *

"The contention of the Pennsylvania Company is that the Lake Shore Company had the right to take and hold the whole of the strip of one hundred feet through the Oliver lot, although it had no occasion to use the east half of it, or any part thereof, at any time; that, after holding such east half for more than twenty-one years, and after finding that it would never need the same for any purpose, the Lake Shore Company might lawfully, not merely lease temporarily, but sell in perpetuity, one-half of such unused strip, that is, a strip twenty-five feet wide, to the Pennsylvania Company, and apply the purchase money ($7,500) to its own use; that the Pennsylvania Company might thereupon construct and operate, on a different grade, a railroad on such strip of twenty-five feet, cutting off thereby the lot owner's access to the different parts of his lot, which, until, then, had been free and unobstructed; and that all this might be done without making to the owner of the lot any compensation whatever, except such as he received in assumed benefits, at the time of the appropriation of the strip of one hundred feet, in February, 1851.

"It would be very surprising to find a decision sustaining a claim so palpably and flagrantly unjust, and we will venture to say that no such case can be found. Not only can no such case be found, but the plainest principles and the clearest authorities absolutely forbid the allowance of any such claim."

And amongst other things the court held: "The land owner is not estopped by the condemnation proceedings to show that the first company appropriated more land than was necessary for its use."

Here we get the gist of that decision, what it was based upon; that it was inequitable and unjust, for the railroad company to take twice as much land as was necessary, without paying a dollar therefor, and then sell one-fourth of it for $7,500, and pocket the money. That the original appropriation and building of the road did no damage to the owner's adjoining property, but the construction of the Pennsylvania road cut off access to the different parts of his lot, which, until then, had been free and unobstructed; that such injury arose from the construction and building of the Pennsylvania line, and was not contemplated when the appropriation was made.

In the case before us no claim is made of any new or additional injury by reason of the construction of the additional road. Nor does Garlick claim to be the owner of any adjoining lands, nor that more land was appropriated by the Cleveland & Mahoning Valley Railway Company than was necessary for its road. Indeed, he would be estopped from making the latter claim, by reason of the fact that the necessity for the appropriation of the land, including its extent and width, under the act then in force, unlike the act of 1848, was required to be decided by the court before the appropriation could be made. Having had his day in court upon this question, the owner could not again contest it. It is *res adjudicata.* Upon the first claim, the decision in Malone v.

Toledo, *supra*, seems conclusive. In that case it is said: "As regards plaintiff, Malone, none of his rights are predicated upon the fact of adjoining ownership. He only alleges that he owns the bed of the canal, and as to this it is not evident how any further servitude can by any possibility be imposed. * * * Clearly then, Malone, simply as owner of the canal bed, would have no right to complain of this change of use, whatever rights he might have, were he an adjoining owner, to recover, for additional servitude imposed."

The statute of 1848, and the one under which this appropriation was made by the Cleveland and Mahoning Valley Railway Comp.a·\. are entirely different in their terms. The statute of 1848 is given in 2 d of Curwen, commencing on page 1394. It is headed, "An act regulating railroad companies."

Section 9 provides for the appropriation, and the interest the company shall hold under the appropriation. The statute allowed a strip one hundred feet in width to be appropriated if it was necessary and the company needed it for its right of way, but no court or tribunal was vested with authority to decide upon that necessity; the railroad company decided that for itself, and the land owner never had his day in court upon that question. Under that statute three commissioners were to be appointed to ascertain and assess the dama es that would accrue to the owner of the land by virtue of the construction of the road, and to also fix and assess the amount of benefits that would accrue to him from its location and construction, and if the benefits in their estimation exceeded the damages, as in the Platt case, then nothing would be due or paid to the land owner. Now, what are the companies' rights after that? It is provided in this section that after making tender of the amount found due to said owner, if any, or giving such security therefor as might be required, it shall be lawful for the railroad company to hold the interest in such land thus appropriated. What interest was appropriated under such a state of facts? Two questions only it would seem were to be submitted to the commissioners. First— what will be the damages to the land owner by the construction of the single track road this company desires to construct? Second—what benefit will its location and construction be to the land owner? The right the company would acquire, the interest it would acquire, might well be said to be to maintain simply such single track road, because the damages and benefits were to be estimated by virtue of what the company was to do, what it proposed to do in its petition. The commissioners must know what the company was to do in order to ascertain what the damages would be on the one hand, and what the benefits on the other, and if the company undertook afterward to sell a portion of the land and have another road built upon it at a different grade by another company that would bar access of the owner to the other parts of his lot, that would seem to be a new damage upon which the commissioners did not pass. At all events, under the act of 1848, fairly construed, the corporation could not acquire the land itself, but a limited interest only. In section 9, while the right seems to be given to appropriate lands, rights, etc., which should belong to the corporation, upon payment, the subsequent provision of the section is that upon payment, etc., "it shall be lawful for such corporation to hold the interests in such lands, or materials * * * for the uses aforesaid." And the same section provides that in the application, the corporation shall describe the "rights and interests intended to be appropriated," and that the appraisers shall "assess the

damages which the owner may sustain by such appropriation," which is inconsistent with the idea of appropriating and awarding full compensation for the land itself.

Now, on the other hand, what title did the Cleveland and Mahoning Valley Railway Company acquire by the appropriation of these lands under the statute under which this appropriation was made? Did it acquire a fee, absolute or conditional, a perpetual easement, or some limited interest only? And did it cover the whole strip, or but a part? We may judge of that by what was to be done in acquiring it. The company was required to make an application and file it in the probate court, and describe the land it desired to acquire. And when the preliminary matters as to the right and the necessity of the appropriation were disposed of by the court, the jury were required to assess to the owner the full market value of that land, and in addition thereto the damages which would accrue to his adjacent lands by the uses the strip taken was to be devoted to, without regard to benefits. The owner was to get the full market value of the land itself, as the company sought to appropriate the land, not a mere interest in it, not some right to be held for some limited time.

The act under which this appropriation was made, sec. 3281, Rev. Stat. (1880), provided: "A company * * * may enter upon any land * * * and appropriate so much thereof as may be deemed necessary for its railroad, including necessary side tracks, depots, workshops, round-houses and water stations * * * ; but no appropriation of private property to the use of a company * * * shall be made until full compensation therefor is made in money or secured by deposit of money, to the owner, irrespective of any benefit from any improvement proposed by the company * * * as prescribed by law."

Section 6416. "In any such case the corporation may file with the probate judge a petition, verified as in a civil action, containing a specific description of each parcel of property, interest or right, within the county sought to be appropriated; the work, if any, intended to be constructed thereon; the use to which the same is to be applied; the necessity for the appropriation; the name of the owner of each parcel, if known, or if not known, a statement of that fact; the names of all persons having or claiming an interest, legal or equitable, in the property, so far as the same can be ascertained, and a prayer for the appropriation of the property."

Section 6420. "On the day named in any summons first served, or publication first completed, the probate judge shall hear and determine the questions of the existence of the corporation, its right to make the appropriation its inability to agree with the owner, and the necessity for the appropriation. Upon these questions the burden of proof shall be upon the corporation, and any interested person shall be heard."

Section 6433. "Upon payment to the party entitled thereto, or deposit with the probate judge, of the amount of the verdict and such costs as have lawfully accrued in the case up to the time against the corporation, the corporation shall be entitled to take possession of, and shall hold the property, rights or interests so appropriated, for the uses and purposes for which the appropriation was sought, as set forth in the petition, and the judge shall enter of record an order to that effect, and if necessary, proper process shall be issued to place the corporation in possession thereof."

Here we find an entirely different statute from the one under consideration in the Platt case, and it seems to be broad enough to enable the companies to appropriate a fee, a conditional fee, a perpetual easement, or a less interest or right at their election. And unlike the act of 1848, which gave the land owner no right to question the necessity of the appropriation, this statute does provide that he shall have his day in court to contest the necessity for the appropriation as to all or any part of the land.

Under the new constitution the first act that was passed contained the same provision as the old act of 1848, that the company itself determined the necessity of the appropriation, and as to the existence of that necessity the land owner had no day in court, and had simply to submit to the amount of land taken by the company, if it did not exceed one hundred feet in width. After attention was called to this by Judge Ranney, in Giesy v. Railway Co., 4 Ohio St., 308, where he declared that it ought to be left to some judicial power to determine that necessity, the statute was amended so as to provide that the necessity for the appropriation shall first be determined by the court before the case shall be submitted to the jury.

Now, when we consider that the company must pay the full market value of the land described in its petition, and may take and hold the land, as contradistinguished from a mere " interest " in it, by the words of the statute, it would seem as if it necessarily followed, that it took the land in fee just the same as if an individual had bought it; especially when the provisions of these sections are construed with others in *pari materia.*

Sections 6443 and 6444, Rev. Stat., provided that the fund paid in by the corporation, if there be conflicting claims thereto, " shall thenceforth represent the land," and proceedings shall, be had "in the same manner as if the land had not been converted into money."

Section 3239 provided : " Upon such filing of the articles of incorporation the persons who subscribed the same, their associates, successors, and assigns, by the name and style provided therein, shall thereafter be deemed a body corporate, with succession and power to sue and be sued, contract and be contracted with, acquire and convey at pleasure all such real estate as may be necessary and convenient to carry into effect the objects of the incorporation, to make and use a common seal, the same to alter at pleasure, and to do all needful acts to carry into effect the objects for which it was created.

Section 3283 provided : " Such company may acquire by purchase or gift any lands in the vicinity of the line of its road, or through which the same passes, so far as may be deemed convenient or necessary by the company to secure the right of way, or such as may be granted to aid in the construction of the road, and hold or convey the same in such manner as the directors may prescribe."

So that power was abundantly given to such corporations to take the title, to acquire and convey at pleasure, all such real estate as may be necessary and convenient to carry into effect the objects of the incorporation ; and each and all of the sections of the statutes are consistent only with the idea that the company when it pays the full market value of the land, whether by appropriation or by purchase, takes an absolute title to it. The meaning of the statute is to be ascertained from a consideration of all of its provisions, and not from a single word or expression ; and the difference between these statutes and the act of 1848 is plain and

marked, especially in this : Under the act of 1848 the owner had no day in court to contest the necessity of the appropriation ; damages were awarded to him only for an interest—an easement—in the land, and not full compensation for the land itself ; and those damages paid by assumed benefits which his neighbor, whose land was not touched, received for nothing.

On the other hand, under the act in force when this appropriation was made, the land owner had his day in court to contest the necessity of the appropriation, and it provided that the corporation should be "entitled to take possession of, and shall hold the property, rights or interests so appropriated," thus authorizing the appropriation of the property—the land—itself, upon payment of full compensation in money without deduction for benefits.

"When is a man fully compensated for his property ? Most clearly and unquestionably, when he is paid its full value, and never before." Giesy v. Railroad Co., 4 Ohio St., 308, 331.

To take and hold the property, after payment of its full value, means to take and hold the thing itself as owner, unless we rob the words of their ordinary signification.

It is well settled that it is for the legislature to determine the estate or extent of the interest which the public necessities require ; whether an estate for years, for life, a mere easement, or a fee absolute or conditional.

So that corporations of this character, if the statute authorizes it, may acquire either one of these estates in an appropriation proceeding. Unlike the act under consideration in the case at bar, as I think I have shown, the legislature did not authorize corporations, by the act of 1848, to take and hold the land itself as owner, or in fee, but the act under consideration here authorizes corporations to take and hold either the land or an interest therein—an easement—at their option, unless the court finds that the necessity for taking the land itself, or all asked for, does not exist.

The Cleveland and Mahoning Valley Railway Company, by virtue of this appropriation wherein it described the parcels of land desired to be appropriated, as required by the statute, having paid the full market value of the land itself, and not a mere interest in it, as assessed by the jury, acquired a perfect title to the land, and had a perfect right to sell or dispose of it, or a part of it, to another railroad company, and its grantee was vested with the same rights ; and if it were a conditional fee, one conditioned upon the character of its use, the result is not different, as it was sold and is still used for railroad purposes ; and under the statute, so long as it is devoted to the uses to which it was appropriated, the original owner cannot retake it.

It would be sufficient in this case to entitle plaintiffs to the relief asked even if nothing but an easement passed, because it would be a perpetual easement, under the statute ; one that would exist so long as the use for which it was appropriated existed. So long as the company that appropriated it, or its grantee or assignee continued to use it for railroad purposes, the easement would continue. The track of the plaintiffs runs between that of the Cleveland & Mahoning Valley Railway Company and the Pittsburgh, Youngstown & Ashtabula Railway Company at the place in question, and upon the same grade, and there is no claim, as heretofore stated, that the construction thereof has inflicted any additional injury to any adjoining lands of the Parmelees, the original owners, or that they owned any adjoining lands.

Railway Co. v. Garlick.

Having at least acquired the right to the property in perpetuity for the uses of a railroad, for the purpose of transporting passengers and freight—a public utility, for the benefit of the people, as well as for the benefit of the stockholders—having that in perpetuity, and having paid the full market value for the land itself, and for all injury to adjoining lands, there would be no remaining interest left to be compensated to the owner. The necessity of the appropriation having been determined, involving the necessity of its extent, including the width of the strip, and the compensation paid, why is it that, with a perpetual easement granted for railway purposes, that it does not still exist for railway purposes, although the company that appropriated it may have sold part of it to another railroad company. Why may it not sell it, when it has paid the full value for it, just as an individual purchaser might? Why is it not entirely immaterial who maintains the use, whether one company or two, especially where the owner has no lands left to be injured or damaged thereby.

The original company had the right to plaster that strip all over with tracks, and what difference does it make to the original land owner whether that company or some other company does it? An appropriation is a legalized purchase, and why should courts affix conditions to it that are not in the statute, and decree payment twice for the same land.

If a company may sell all, or a part of its right of way, transfer it to another company; if a canal company can transfer its easement to a railroad company without working an abandonment, why should the sale of one-fourth in width of the land in question, a part for the same use, work an abandonment? The greater includes the less. If one can sell the whole of a thing, he can sell a part of it. It would be the height of technicality to construe the statute under consideration to mean that the easement should exist only so long as the particular company holds it that appropriated it, instead of so long as it is devoted and used to and for the purposes for which it was appropriated. While that use exists, it is immaterial who controls it.

We think plaintiffs should be quieted in their title to these lands, and an injunction will be granted to restrain defendant, Garlick, from interfering with their possession by appropriation proceedings or otherwise. The same orders may be entered in favor of the cross-petitioner, the Pittsburgh, Youngstown & Ashtabula Railway Company. Its predecessor, the Liberty & Vienna Railroad Company, by the deed from the Parmelees, took a conditional fee in a part of the canal lands at the point in question, built its track upon the berm bank; and the Cleveland & Mahoning Valley Railroad Company appropriated all of such lands not conveyed to the Liberty & Vienna Railroad Company, and that these two companies acquired all those lands. Garlick's claim of ownership covers a part of the lands thus acquired by the Liberty & Vienna Railroad Company. We have found that the latter company, as against Garlick acquired a strip at all points twenty-three feet southerly from the centre of its track, as we think the line should be a straight line; but whether straight or tapering, as claimed by Garlick, his claim of ownership covers part of the land thus acquired by that company.

We do not, however, determine, because of the agreement of the parties, the conflicting claims of the plaintiff and the Pittsburgh, Youngstown & Ashtabula Railway Company as to where the line is as between them.